UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMERICAN BIOCARBON, LLC, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| **PHILIP KEATING, ET AL.** | **NO. 20-00259-BAJ-EWD** |

### RULING AND ORDER

Before the Court are two motions to dismiss: Defendant Philip Keating's **Motion To Dismiss For Failure To State A Claim Or, Alternatively, Rule 12(e) Motion For A More Definite Statement Of Plaintiffs' Claims (Doc. 19)**, and Defendant Jan Anders Borg's **Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim Or, Alternatively, Rule 12(e) Motion For A More Definite Statement (Doc. 20)**. Plaintiffs oppose each motion. (Doc. 32).

Also before the Court are various related motions: Plaintiffs' **Motion for Preliminary Injunction (Doc. 9)**; Defendants' joint **Motion For Protective Order To Stay Deadlines And Discovery (Doc. 56)** and **Motion for Expedited Consideration (Doc. 57)**; and Plaintiffs' **Motion To Enforce Status Quo Order (Doc. 60)**.

For the reasons stated herein, Defendants' Motions to Dismiss are each **GRANTED**, and the above-captioned action is **DISMISSED**, subject to Plaintiffs' right to amend within 30 days of the date of this Order; Plaintiffs' Motion for Preliminary Injunction is **DENIED**; Defendants' Motion for Protective Order is

1

**DENIED AS MOOT**; and Plaintiffs' Motion to Enforce Status Quo Order is **DENIED AS MOOT**.

## I.  ALLEGED FACTS

This case arises from an employment relationship gone bad. For present purposes the following allegations are accepted as true[1]:

Plaintiffs American Biocarbon, LLC and American Biocarbon CT, LLC (collectively, "AB") manufacture bagasse pellets, a sugarcane byproduct that can be substituted for coal and other biomass fuels in various applications, including power generation. (Doc. 1 at ¶¶ 7-10). AB specializes in the manufacture of "white" bagasse pellets, and sells its product worldwide. (*Id.* at ¶¶ 10-11). AB "has made a substantial economic investment to develop and fine tune its processes," and its methods for sourcing materials, and processing, engineering, and marketing its product are closely-guarded secrets. (*Id.* at ¶¶ 11-12, 15). AB alleges that its "confidential information and trade secrets include, without limitation:

> studies; know how; scientific research; product research; product testing and results; product development research; market research and strategies; prospective client lists; client research; plant designs; plant site research; process designs; company financial information such as

---

[1] The alleged facts stated herein are drawn from Plaintiffs' Complaint. In their Motions to Dismiss, Defendants invite the Court to consider substantial information *outside* the four corners of Plaintiffs' Complaint, including URL addresses and websites, in order to establish a competing version of facts. (*See* Doc. 19-1 at 1-6; Doc. 20-1 at 1-9). Plaintiffs correctly note that Defendants' attempt to inject a factual dispute is "not appropriate … on a motion to dismiss filed pursuant to Rule 12(b)(6), as the Court must take the allegations in the complaint as true." *Gulf Offshore Logistics, L.L.C. v. Seiran Expl. & Prod. Co.*, No. 11-cv-1788, 2015 WL 1125140, at *4 (E.D. La. Mar. 12, 2015); *see also Pustanio v. Schiffer Pub., Ltd.*, No. 11-cv-2153, 2012 WL 2155168, at *2 (E.D. La. June 13, 2012) ("This Court will not look beyond the factual allegations in the [complaint] to determine whether relief should be granted." (citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)). The Court disregards Defendants' additional "factual" material in its consideration of Defendants' Motions to Dismiss.

> costs, profits, assets and liabilities; any confidential information related to the manufacture, composition, marketing, or processing, of white pellets, bagasse pellets, or sugar cane wastes; organizational structure; information pertaining to off-take agreements developed by or for [AB].

(*Id.* at ¶ 14).

Until recently, Defendants Philip Keating and Jan Anders Borg were high-ranking employees of AB: Keating was AB's Chief Executive Officer; Borg was AB's Vice President of Engineering. (*Id.* at ¶¶ 18-20). In their respective roles, Defendants each became "intimately familiar" with AB's "operations, … patents, technology, trade secrets, processes, methods, customer and marketing prospects and research, and/or secret formulas." (*Id.* at ¶ 24). Borg (but apparently *not* Keating) executed a 5-year confidentiality agreement (on March 7, 2016), whereby Borg "agreed not to disclose any of [AB's] confidential information to third parties or use such confidential information for anything other than the purpose outlined therein." (*Id.* at ¶ 22).

Defendants' employment with AB ended sometime around January 2020, when AB changed ownership. (*See id.* at ¶¶ 17-18, 20). AB alleges that in the months preceding the change of ownership, Defendants conspired to form a new bagasse pellet production company, Tasso Renewable Energy, LLC ("TRE"), that would compete directly with AB. (*Id.* at ¶ 26). AB alleges that to further their plan, Defendants engaged in various acts promoting TRE at AB's expense, to include allowing AB's patents to expire; diverting business opportunities and clients from AB to TRE; and misappropriating AB's confidential information and trade secrets. (*Id.*). In sum, AB contends that it has been damaged, and that Defendants have wrongfully profited, by Defendants' usurpation of AB's "technology, trade secrets, intellectual

3

property, processes and methods of producing bagasse pellets." (*Id.* at ¶ 44).

## II. PROCEDURAL HISTORY

On April 30, 2020, AB filed this action, alleging violations of The Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* ("DTSA"), and various related state law claims, including violations of the Louisiana Uniform Trade Secrets Act, La. R.S. § 51:1431, *et seq.*, and the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. § 51:1401, *et seq.* (Doc. 1). AB seeks damages, attorneys' fees, costs, and an injunction restraining Defendants from disclosing, "usurping or otherwise converting" AB's trade secrets and confidential information. (*Id.* at ¶¶ 71-78). Notably, AB contends that the Court maintains jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), based exclusively on its DTSA claim. (*Id.* at ¶ 3).

On May 13, 2020, AB filed its Motion for Preliminary Injunction, seeking an interim order prohibiting Defendants from "disclosing … usurping or otherwise converting [AB's] technology, trade secrets, processes, methods, and/or formulas." (Doc. 9 at 1). On May 15, the Court ordered a telephone conference to discuss AB's Motion. (Doc. 11). At the May 18 conference, the parties' stated their respective positions, and discussed Defendants' deadline to respond to AB's Motion. As reflected in the Court's May 18 Minute Entry, Counsel agreed among themselves "to maintain status quo," and "[t]he Court encouraged Counsel to engage in good faith effort to resolve this matter." (Doc. 23). On June 18, Defendants each filed oppositions to AB's Motion. (Docs. 28, 29). On July 2, AB filed its reply. (*See* Docs. 33, 37). In this initial round of briefing, AB did *not* request a hearing on its preliminary injunction motion.

4

On June 4, 2020, Defendants filed their Motions to Dismiss. (Docs. 19, 20). Most relevant here, Defendants contend that AB's DTSA claim fails because AB fails to identify what trade secrets Defendants have allegedly misappropriated. (Doc. 19-1 at 9; Doc. 20-1 at 12). On June 25, AB filed a single opposition to Defendants' motions. (Doc. 32). AB insists that its claims are sufficiently alleged—including its DTSA claim—but nonetheless requests leave to amend should the Court disagree. (*Id.* at 7-20). On July 9, Defendants filed their reply briefs. (Docs. 34, 35).

On November 6, 2020, Defendants filed their Motion for Protective Order and Motion for Expedited Consideration. (Docs. 56, 57). Essentially, these motions repackage arguments from Defendants' Motions to Dismiss, contending that AB still has not identified what trade secrets are at issue, making it impossible to proceed with discovery. Accordingly, Defendants propose a stay of discovery and pretrial deadlines until such time as the Court rules on Defendants' pending Motions to Dismiss. AB opposes any stay of discovery. (Doc. 63).

Finally, on November 13, 2020, AB filed its Motion to Enforce Status Quo Order. (Doc. 60). AB contends that the Court's May 18 Minute Entry operates as an "order formalizing the parties' agreement to 'maintain the status quo,'" and that Defendants have violated this agreement by "continu[ing] to further their ongoing competing business efforts." (Doc. 60 at 1-3). AB seeks an order "formalizing the parties' agreement to 'maintain the status quo' pending the Court's anticipated ruling on the Motions to Dismiss … and pending the hearing and ruling on [AB's] Motion for Injunctive Relief." (Doc. 60-1 at 1). Defendants oppose AB's Motion. (Doc. 64).

5

## III. ANALYSIS

### A. Defendants' Motions To Dismiss (Docs. 19, 20)

#### i. Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). Importantly, however, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million,* Inc., 296 F.3d 376, 378 (5th Cir. 2002) (quotation marks omitted).

#### ii. Discussion

##### a. AB's DTSA claim fails because AB does not adequately identify the information comprising its "trade secrets"

The DTSA grants the "owner of a trade secret that is misappropriated" the

6

right to bring a civil action "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). It follows that to state a claim under the DTSA, AB must allege that (1) it owns a trade secret; (2) the trade secret was misappropriated by Defendants; and (3) the trade secret is related to a product or service used or intended for use in interstate or foreign commerce. *See Total Safety U.S., Inc. v. Code Red Safety & Rental, LLC*, No. 19-cv-12953, 2019 WL 5964971, at *3 (E.D. La. Nov. 13, 2019).

Defendants contend that AB's DTSA claim fails at the first element because AB does not identify the specific information comprising its trade secrets, but instead relies on "vague and overly broad categories." (Doc. 20-1 at 12; *see also* Doc. 19-1 at 9). In other words, AB "does not specifically identify what studies, what 'know how,' what research, what testing, or what designs it claims to have, or claims the Defendants have misappropriated." (*Id.*). The Court agrees. AB's failure to allege the actual information and trade secrets at issue is fatal to its DTSA claim.

The DTSA's definition of "trade secret" is expansive, and includes

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing[.]

18 U.S.C. § 1839(3). Yet, despite this broad definition, plaintiffs pursuing DTSA claims must put a finer point on their allegations. "Specifically, to allege a trade secret, the plaintiff must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade

7

or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020) (quoting *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)); *accord Universal Processing LLC v. Weile Zhuang*, No. 17-cv-10210, 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018) (citing authorities).

Here, AB has deliberately avoided *any* effort to set boundaries within which its trade secrets lie, much less differentiate its alleged trade secrets from matters of general knowledge. Indeed, AB expressly alleges that its trade secrets are *unlimited*, stating in its Complaint that its "confidential information and trade secrets include, ***without limitation***:

> studies; know how; scientific research; product research; product testing and results; product development research; market research and strategies; prospective client lists; client research; plant designs; plant site research; process designs; company financial information such as costs, profits, assets and liabilities; any confidential information related to the manufacture, composition, marketing, ***or*** processing, of white pellets, bagasse pellets, ***or*** sugar cane wastes; organizational structure; information pertaining to off-take agreements developed by or for [AB].

(*Id.* at ¶ 14 (emphasis added)). In word and effect, AB asserts a DTSA claim that envelopes every aspect of the bagasse pellets industry. Facing similarly vague and unbounded allegations, courts do not hesitate to dismiss DTSA claims.

For example, in *Vendavo, Inc. v. Price f(x) AG*, the U.S. District Court for the Northern District of California dismissed a DTSA claim where the plaintiff, a software designer, alleged misappropriation of "trade secrets" consisting of:

> source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and

8

>  strategic business development initiatives, "negative knowhow" learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements [and other information not expressly covered by its patents].

2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018). In pertinent part, the Court noted that the plaintiff "set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated here." *Id.* at *4. The same criticism applies to AB's Complaint.

The U.S. District Court for the Southern District of New York reached a similar result in *Universal Processing LLC v. Weile Zhuang*, dismissing a DTSA claim where the plaintiff, a credit card processing business, alleged misappropriation of trade secrets consisting of "marketing information, financial information, client lists, business models, pricing formulas, customer data and social media sites, and applications with specific Universal usernames and passwords." 2018 WL 4684115, at *1. Relevant here, the Court determined that the plaintiff failed to "include factual allegations from which the Court can understand what the Marketing Program financial model is and the basis of Plaintiff's contention that it is a trade secret within the meaning of the DTSA." *Id.* at *3. Again, AB's broad and conclusory allegations are subject to the same criticism.

In sum, AB's conclusory allegations fall well short of the particularity standard necessary to separate its alleged trade secret(s) from matters of general knowledge in the bagasse pellets industry or of special persons who are skilled in the trade, and

to permit Defendants "to ascertain at least the boundaries within which the secret lies." *Navigation Holdings*, 445 F. Supp. 3d at 75. As such, AB's DTSA claim is insufficient to withstand Defendants' Motions to Dismiss. *Id.*; *see also Universal Processing*, 2018 WL 4684115, at *1. Accordingly, Defendants' Motions will be granted, and AB's DTSA claim will be dismissed, subject to AB's right to amend within 30 days of the date of this Order. *See Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) ("The court should freely give leave [to amend] when justice so requires." (quoting Fed. R. Civ. P. 15(a)(2)).

### iii. AB's pendant state law claims will be dismissed, subject to AB's right to amend its Complaint

As stated, AB filed its Complaint in federal court under the general federal question jurisdiction statute, 28 U.S.C. § 1331, based exclusively on its DTSA claim. (Doc. 1 at ¶ 3). Having determined that AB's DTSA claim fails and must be dismissed, the Court is divested of federal question jurisdiction. Thus, "the court must exercise its discretion whether to exercise supplemental jurisdiction." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999).

The supplemental jurisdiction statute, 28 U.S.C. § 1367(c)(3), provides:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The U.S. Court of Appeals for the Fifth Circuit instructs courts to treat these four categories as "statutory factors" to consider when evaluating supplemental

10

jurisdiction. *Enochs v. Lampasas Cty.,* 641 F.3d 155, 159 (5th Cir. 2011). Additionally, the Fifth Circuit requires consideration of "common law factors [of] judicial economy, convenience, fairness, and comity." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)).

"When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." *Bass*, 180 F.3d at 246. This general rule holds particular force when, as here, the litigation is in its early stages, and has not yet demanded significant judicial resources. *E.g.*, *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587-90 (5th Cir. 1992) (district court abused its discretion in retaining jurisdiction over state-law claims following dismissal of federal claims where case had been pending for only nine months and discovery had not been completed).

Here, while AB's Complaint does not involve complex issues of state law, the remaining factors support dismissal. The second statutory law factor weighs in favor of dismissal because the state law claims predominate over the now non-existent federal law claim. The third factor weighs in favor of dismissal because the federal claim will be dismissed by this Order, subject to AB's right to amend. Finally, as explained below, the fourth factor, which incorporates the common law factors, weighs in favor of dismissal. *See Enochs*, 641 F.3d at 159 ("The fourth [statutory] factor also favors remand, as the heavy balance of the common law factors in favor of remand constitutes another compelling reason to decline jurisdiction.").

Turning to the common law factors, judicial economy weighs in favor of dismissal because "at the time the federal claims were deleted hardly any federal

11

judicial resources, let alone a significant amount of resources, had been devoted to the ... consideration of the ... state law claims (or to any claims)." *Id.* Next, neither party has offered any argument as to convenience. Accordingly, the Court deems this factor neutral. The third common law factor also weighs in favor of dismissal because "it [is] certainly fair to have … the purely … state law claims heard in … state court … ." *Id.* Finally, insofar as federal courts are "not as well equipped for determinations of state law as are state courts," the fourth common law factor of comity is served by dismissal. *Id.*

Upon consideration of the statutory and common law factors, the Court will follow the Fifth Circuit's general rule and decline at present to exercise supplemental jurisdiction over AB's state law claims. Accordingly, AB's state law claims will be dismissed without prejudice, subject to AB's right to reassert its state law claims in an amended complaint.

### B. AB's Motion For Preliminary Injunction (Doc. 9)

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quotation marks omitted). A party requesting a preliminary injunction must demonstrate each of the following: 1) a substantial likelihood of success on the merits; 2) a substantial threat that failure to grant the injunction will result in irreparable injury; 3) the threatened injury must outweigh any damage that the injunction will cause to the adverse party; and 4) the injunction must not have an adverse effect on the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 419 n.15 (5th

Cir. 2001). The Fifth Circuit has deemed the first element to be *sine qua non*, meaning there is no need to proceed to the other elements if a substantial likelihood of success on the merits cannot be proven. *See Walgreen Co. v. Hood*, 275 F.3d 475, 477 (5th Cir. 2001) (affirming denial of preliminary injunction on the sole basis that there was no substantial basis that the plaintiff would prevail on merits); *see also La Union Del Pueblo Entero v. FEMA*, 608 F.3d 217, 225 (5th Cir. 2010) (issuance of preliminary injunction was erroneous because a substantial likelihood of success was not shown, no analysis of subsequent elements was needed). The Fifth Circuit further instructs that a district court may deny a motion for preliminary injunction without holding a hearing if it does not "rely on any disputed facts in determining whether the injunction should issue." *Anderson v. Jackson*, 556 F.3d 351, 361 (5th Cir. 2009) (noting that there was "extensive briefing" on the motion and that the district court also held a teleconference); *see also Jones v. Am. Council on Exercise*, 245 F. Supp. 3d 853, 857 (S.D. Tex. 2017).

Here, the Court has determined that AB's sole federal claim fails for lack of specificity, and that its pendent state law claims must be dismissed. Since AB's underlying claims fail, AB's request for injunctive relief must also be denied as AB cannot establish any likelihood of success on the merits. *See Berry v. LoanCity*, No. 18-cv-888, 2019 WL 2870849, at *9 (M.D. La. July 3, 2019) (granting defendant's motion to dismiss and denying plaintiff's motion for preliminary injunction: "Because the Court has already disposed of all of their claims, they cannot show any likelihood of success on the merits, much less a substantial one."); *Adrian v. Chase Mortgage*,

No. 13-cv-2403, 2014 WL 12577402, at *3 (S.D. Tex. Mar. 28, 2014) (granting defendant's motion to dismiss and denying plaintiff's motion for preliminary injunction: "Since this Court has determined that the plaintiff's accompanying claims fail, the plaintiff's request for injunctive relief must also be denied as she cannot establish any likelihood of success on the merits."). Further, no evidentiary hearing is required because the Court does not rely on any disputed facts in determining whether an injunction should issue, and the Court allowed extensive briefing on AB's Motion. *See Anderson*, 556 F.3d at 361.

### C. AB's Motion To Enforce The Status Quo Order (Doc. 60)

As stated above, AB's Motion to Enforce Status Quo Order seeks an order "formalizing the parties' agreement to 'maintain the status quo' pending the Court's anticipated ruling on the Motions to Dismiss … and pending the hearing and ruling on [AB's] Motion for Injunctive Relief." Defendants' oppose AB's Motion. (Doc. 60-1 at 1). Having ruled on Defendants' motions to dismiss, and AB's motion for preliminary injunction, AB's Motion to Maintain Status Quo Order is moot.

### D. Defendants' Motion For Protective Order (Doc. 56) and Motion for Expedited Consideration (Doc. 57)

Finally, Defendants' Motion for Protective Order and Motion for Expedited Consideration (Docs. 56, 57) seek a "stay of pretrial deadlines until such time as the Court issues a ruling on Defendants' pending Motions to Dismiss." (Doc. 56 at 4). Here, again, having ruled on Defendants' Motions to Dismiss, Defendants' request for a protective order and stay is moot.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motions to Dismiss (Docs. 19, 20) are GRANTED**. The above-captioned action is **DISMISSED**, subject to Plaintiffs' right to amend their Complaint within 30 days of the date of this Order. Plaintiffs' failure to timely amend will result in a final judgment of dismissal.

**IT IS FURTHER ORDERED** that Plaintiffs' **Motion for Preliminary Injunction (Doc. 9) is DENIED**.

**IT IS FURTHER ORDERED** that Defendants' joint **Motion For Protective Order To Stay Deadlines And Discovery (Doc. 56)** and **Motion for Expedited Consideration (Doc. 57)** are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that **Plaintiffs' Motion To Enforce Status Quo Order (Doc. 60)** is **DENIED AS MOOT**.

Baton Rouge, Louisiana, this 10th day of December, 2020

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**